Good morning, Your Honors. Theodore J. Boutrous, Jr. representing Appellant Christine Wolf. I'd like to reserve three minutes for rebuttal. Section 1653 and Rule 60B grant this authority to order amendment of a complaint to remedy defective jurisdictional allegations as long as jurisdiction actually exists. This court should exercise that authority here in order that Ms. Wolf's complaint be amended and her case reinstated. It's an extraordinary situation because there's essentially double-barrel equitable authority here that addresses precisely this issue where a mistake has been made in pleading jurisdiction, yet it's undisputed jurisdiction actually exists. There were two mistakes here. There was the original mistake in the complaint where the correct citizenship wasn't alleged. Then there was a second mistake which is that the court said you have an opportunity to amend but the direction was the OSC was misread and the change wasn't made. So has there ever been a case where an appellate court in that sort of circumstance where the party was given the opportunity to make a correction and then because of another mistake didn't make it exercised the authority under 1653? There are cases, Your Honor, there's no case exactly like that, but the general approach of the courts has been to give multiple opportunities to correct the pleading error. Here it was a different law firm drafted the complaint. There's no question that the current legal team misinterpreted the OSC and made a mistake, but the moment it was recognized, the first court day after the order dismissing, evidence was put before the court, undisputed evidence with the Rule 60B motion that Ms. Wolfe was a citizen of Connecticut and fixed the claim. This court in the Lamage decision under Rule 60B where the plaintiff's counsel had failed to serve a complaint in time, an OSC issued, that lawyer then failed to respond at all to the OSC, yet under Rule 60B this court found that the complaint should be reinstated and that it was error to die under Rule 60B. Well, when I read Pin K, it seems to me that it's really saying that this decision should be entrusted to the discretion of the district court because the district court's in a better position than I am to evaluate the factors underneath this. And it also seems to me in reading our cases that attorney neglect is the least compelling excuse. And therefore, I say to myself, it seems to me if somebody's going to argue attorney neglect and some reason to get out of attorney neglect, they probably ought to have a hearing and give all kinds of excuses and try to plead to somebody. That's certainly not something we ought to do on appeal. So why not just send it back to the district court and say, go ahead, decide what you're going to do. Well, I think, Your Honor, it really goes to two points. First, the district court committed clear legal error by not applying the correct legal standards, the pioneer standards. This court in the Lamage decision most recently, in the Bateman decision, in the Mendez decision, where the district courts declined to even apply the standards. And that's what happened here. The pioneer standards were brought to the district judge's attention. I'm assuming we agree with you on that. I think this is what Judge Smith's question is. Why wouldn't we say district court, you got it wrong. You have an obligation to apply the pioneer factors. Send it back and do so, rather than fixing it, as Judge Smith says here on 1653. Judge Acuda, I think this is exactly like the Bateman situation and the Lamage situation, where this court applied the pioneer factors itself because the full record was before the court. Here it's undisputed that there is diversity jurisdiction. The court in Bateman, in footnote 3, said the record is sufficiently complete. Both sides have briefed the merits of the standards. It's time to put this matter aside and get on with the case. And this case has been pending for five years. It was on the brink of trial. To this day, defendants have not contested that there's diversity jurisdiction. This was an honest mistake. The district court did not analyze good faith, but there's no evidence that this was anything other than a good faith mistake, misreading of the order. And to Judge Smith's point about excusable neglect and attorney error, the court in Pinquet and in subsequent decisions, Mendez, Lamage, and other cases, has said that that's the beginning of the inquiry as to whether it's excusable neglect. And here we have a really extraordinary situation. The underlying rule, Section 1653, is a rule of leniency. And the court mentioned this in Pinquet, mentioned it in Lamage. It's meant to excuse attorney error on this exact issue. So it's really, there's no disputed fact. There's a statute that is meant to allow this court on appeal with plenary authority to deem the complaint amended. And then we will leave this court and go back and litigate these issues. And it will be an easy exit for us back to the district court. And that's what Section 1653 is for. The bottom line is, would your mind change if you had somebody like me who reads this record and says to himself, hey, this isn't a matter where the district court didn't say do something. This isn't a matter where the district court sat there and let the time go by and then caught him. This is a matter where the district court opened this up, gave this attorney every opportunity, did everything, flagged out what had to be done, and it wasn't done. Seems to me rules are rules. Your Honor, that's what Section 1653 is supposed to address. So if an attorney makes an error, it isn't visited on the client. That's what the legislative history says. And on all of the Rule 60B cases where the district court has said, done that, noticed that there was an error, and then given an opportunity, they all have given the lawyers multiple chances. The Harris case that defendants rely so heavily on, there the court said, I think there's a jurisdictional issue. No response at all from the plaintiff. Here there was an attempt, misinterpretation. Then the Harris court, and again, this is a big decision, and this part is omitted from the defendant's brief, said, come in, I want to see the evidence. And at that point the plaintiff didn't put any evidence. And at that point the court said, enough is enough. That's not what happened here. The second mistake was made. Mr. Vitros, it's Judge Gould with a question for you. It does seem to me that under the Limoges opinion, which I do recall still, I didn't write it that long ago, that we definitely have to send this back for the district court, at a minimum, to consider the four factors the Supreme Court talked about in Pioneer. I think that in addition, Limoges was also a case involving a screw-up by a lawyer, and we said that the hardship on the claimant, losing their claim, could be considered. But we sent it back. I suppose we could do that here. We could send it back and see what the district court did. But if the district court adopts an attitude that, well, the lawyer error kills the possibility and just reaffirms his decision, then the case would be appealed again, saying that there's an abuse of discretion in applying the proper factors. I suppose that would go back up to another panel or this panel. And so the question in my mind is sort of in terms of the big picture is, is the record complete enough for our court to use this other statute to address jurisdiction ourself, or is it a better procedure to send it back to the district court, as Judge Smith said? And then, of course, someone can look at what the district court does later. Your Honor, I think the better approach, the simplest approach, is simply to invoke Section 1653, which gives this court plenary authority if the record is clear that diversity jurisdiction exists, to simply non-proton amend the complaint. That's what this court did in the Snell decision. Courts around the country have done it. This court has done it a number of times. The record is sufficiently clear, Judge Gould. It's undisputed that there's diversity jurisdiction. And never in the history of Section 1653 or the courts has there been a case where it's undisputed that there's diversity jurisdiction, and the plaintiff did put that evidence before the district court. Courts have never said, we're still going to bounce you out of court. There are cases where contemptuous conduct occurred in the district court. Judge Smith, this goes to your point a bit. If the plaintiff had just ignored the district court once the issue was brought to the plaintiff's attention, if there wasn't jurisdiction, if it was doubtful, the Joy case, Judge Gould, was a First Circuit case, again, really the main authority relied on by defendants. And in that case, the plaintiff ignored what the district court said, did not put forth any evidence of jurisdiction before the district court. Then up on appeal, tried to bring forth new evidence to the Court of Appeals, and there was a dispute about jurisdiction. We have the opposite situation here. Undisputed that there was jurisdiction in utter good faith. There was no benefit to not fixing this one word in the complaint. It was a pure mistake. But that's what Section 1653 is meant to allow this court to do, is just fix it. We go back. Parties can hammer it out on the merits for better or worse on each side. That's what Section 1653 is meant to do, allow the cases to be resolved on the merits. So I think that's clearly the simplest and clearly legally correct way to go about it. The Limoge decision and Bateman, this court actually resolved the question and found that it was an abuse of discretion to deny 60B relief and then ordered 60B relief. And I think the court would be justified doing that here because Section 1653 animates the Rule 60B analysis and provides, again, sort of super equitable reasons to grant this sort of relief. And I would like to reserve the rest of my time for rebuttal. Thank you. Thank you. Thank you. Good morning. Dale Kinsella on behalf of Appellees and Cross Appellants. I'd like to pick up with a question that has been posed, which is assuming the court honors the recent Limoge decision, what should it do? Should it do what it did in the Brails? I don't want to sound defensive, but doesn't our panel have to honor Limoge? It has to honor Limoge to some extent. And I'm conceding that Limoge is correct, it is good law, and that as far as it goes that the district court abused its discretion in not analyzing the pioneer factors. That's my concession for the day, but that's as far as I'm concerned. That's a good concession given who's on this panel. I agree. It wasn't terribly difficult to make. I mean, it wouldn't be hard maybe if it was just Ikuda and me and somebody else, but there's a real good reason for you to be here. I have been practicing that word concession for hours. But the issue in front of this court, it seems to me, is that you could do what the court did in the Brians v. Franklin decision, which was vacate the judgment and remand with instructions. Or you could do what was done in Limoge, which is decide the facts for yourself, conduct the analysis under the four factors of pioneer, and reverse. Why can't we just apply 1653? I mean, it's undisputed that she's a resident, or she's a citizen, not just a resident. There doesn't seem to be anything in the record suggesting that was anything other than a mistake. And isn't it more efficient for judicial resources to just correct the complaint? Well, I'd like to answer that question, if I may, by going through some of the reasons why I think there are five compelling reasons to remand this to the district court, and I think I will answer that question as I'm doing it. The five compelling reasons, it seems to me, why it should go back down to the district court are, first, the United Circuit in Bank, and I think 2004, made the determination in Pinquet that the district courts are in the best position to conduct this analysis. It was a very lengthy opinion in which this was discussed, and that was reaffirmed in the Mendez decision this very year in 2009. So as a policy reason, the district court should be deciding. Second, and something Mr. Boutros did not discuss, is the issue of invited error here. And I want to deal with that separately, if I may, but I think that Judge Gutierrez is entitled to a fair opportunity to decide this question, and I don't think he was given that fair opportunity in the motion that was filed before the district court. As you may recall, the appellants in that case, in this case, went out of their way to argue that this was not an excusable neglect case, but rather was a mistake case under 60B1. And that is not a distinction without a difference. Indeed, in the Latshaw opinion decided in 2006, which is germane to this question, that was decided, or at least the discussion was about mistake, and that is what Judge Gutierrez decided and cited was the Latshaw opinion. All I'm suggesting is if you read the papers, and in particular footnote 8 of the moving papers before the district court, the appellants went out of their way to say that it was not an excusable neglect case, but rather they were moving on a mistake basis. I think the reasons they were doing that was somewhat obvious, but that's neither here nor there. I think that the district court is entitled to at least be fairly presented with the issue, as opposed to for the first time, as it is up here, suggesting that they were really moving on the grounds of excusable neglect. Third good reason. As again the court said in Pinkei, and I think the court is instructed because it comes from Pioneer, Pioneer itself instructs courts to determine the issue of excusable neglect within the context of the particular case, a context with which the trial court is most familiar. And I'd like to discuss for a moment the issue of bad faith here. Mr. Boutros says there is no issue of bad faith, but that's for the district court to determine in the context of the case. And let's remember what the context of the case was. First, at the time Judge Gutierrez made his ruling, we had on file a Rule 11 motion that had an entire history of bad faith that the judge could have taken into consideration. Second, there was filed at the same time of the response to the judge's OSC, which was incredibly brief and contained the errors, an entirely new dramatic second amended complaint six months after the deadline had elapsed. That was context which the court was entitled to take into consideration and what was contained in that amendment. Third, the moving grounds to have that amended complaint considered was according to the appellants under Rule 15. But it clearly wasn't a Rule 15 motion, it was a Rule 16 motion because the scheduling order had been effected. Again, the district court is entitled to take the context into effect for purposes of determining when there was bad faith. And finally, I don't think there can be any serious question but that the purpose for filing that second amended complaint was for purposes of disrupting completely the motions for summary judgment that were going to be filed a week later for which we had already met and conferred extensively. They knew exactly what our motions for summary judgment were going to be. We filed them a week later and I would submit that you can't read that record in any other way and particularly the context of the second amended complaint as being designed to do anything other than disrupt those motions for summary judgment and cause everybody, including the district court, a great deal more work. What do I suggest? Under Pinke and Mendez, this court has been very clear that the district court is in the best position to determine context in which this is all occurring. And I would submit it's not as simple to say, gee, there's no bad faith here. There was an entire record here that the court was entitled to consider and indeed can be supplemented. And what could it be supplemented with? What was not in front of Judge Gutierrez and what did occur here was after this case was dismissed, what did Ms. Wills do? She went to the state and refiled the complaint in state court. Are there cases saying that when we're considering this type of mistake that it's appropriate to look at other aspects of the litigation or is the district court just directed to look at the issues surrounding the actual mistake? Fair question, but I think what's happened here is these issues are inexorably linked to the mistake. The mistake was made in filing a response to the OSC which reasserted residency. But it was coupled, if you will, what I would submit is a degree of bad faith conduct involving the filing of the second amended complaint and the development of the Rule 11 motion which contained a wide variety of conduct, not the least of which is Ms. Wolf repeatedly admitting that she had, in her words, no facts to support any of the core claims in her complaint with respect to the issue of valuation. So I do believe that there is some authority for the proposition and the linkage of the acts of bad faith coupled with the mistake. What stage should I look at that would help me understand that? I would suggest that, well, what I'm articulating is that the mistake was linked to the bad faith. I don't think there is a case in which, as a matter of fact, it's very hard to find a case within the Ninth Circuit in which the Ninth Circuit has ever found bad faith. But my point is this case is somewhat different. We would not be in this courtroom if the lawyers had simply read the instructions and changed one word, resident to citizen. Instead what occurred here was a document was filed with the court in which that error was not fixed but an enormous amount of time was spent filing a second amended complaint and a motion founded on erroneous law which attempted to change the entire dynamic of the case. Had one fiftieth of the time been spent trying to address the judge's concern as had been put into the second amended complaint, there's no question we wouldn't be here. So what am I suggesting? That the mistake is inextricably coupled with a variety of acts of bad faith. And I don't think there is a decision that you could look to get any guidance on that. Mr. Kinsella, I had a concern along the lines of Judge Aikuda's question. And my understanding was always that the bad faith we'd be looking for here would be if there was bad faith in the pleading of the elements that went to citizenship. You know, bad faith in regard to the conduct that caused the dismissal, not bad faith in some other aspect of the lawsuit. Now, you know, if there's some case that adopts from any circuit, not just the Ninth, if there's any appellate case that articulates a theory of what the bad faith factor means along the lines you've argued, I'd be interested in looking at that from any circuit. There is none that I'm aware of. Although, again, I think that there is a paucity of authority in which circuit courts have found bad faith, although I think this case is demonstrably different. And, again, I don't know how else to say it except that I think that the act of neglect here is inexorably linked to the acts of bad faith. And that's why I said we would not be here if near the attention had been paid to fixing the error that was spent in trying to resurrect a case that was functionally dead as a result of Ms. Wolfe's testimony. And that is what I think is the problem. I guess my worry is, and I've tried to listen to you and list the five things that you have here, but when I look at the factors which Judge Gutierrez is going to have to apply, I guess I don't find anything in what you've argued that danger of prejudice yet, length of delay and its potential impact on the proceedings, reason for the delay, and the only place I have is did the movement act in good faith, and my colleague asked my question that I would have asked. I guess I'm trying to figure out applying the factors which we have to apply. The Supreme Court has told us to apply. Your arguments, I'm trying to figure out where they go in these factors. Well, hopefully the district court will apply them, but in the event this court decides to do it, we have conceded one and two are not applicable. Factor number three, although the Supreme Court in Pioneer used the word delay, that's because the element of delay was present. What I believe factor number three is is what was the reason for the neglect, and I do believe that there is an analysis that the district court can conduct there, and if I may focus on that for a moment. Please consider that what the district court was pointing out to the appellants was, look, you have made two mistakes. One, which is very clear, is you've alleged residency and not citizenship, and so the question is, is there any explanation for what was done there? And the response that is filed repeats not only the word resident as opposed to the citizen, but it does something incredibly bizarre, which is, as to plaintiff Philpott, it was appropriately alleged that Philpott was domiciled in California. The word domicile was used. As to Martin Weinberg, it was alleged that Weinberg was domiciled in the state of Canada. So this to me is like the error in pin K. It is simply inexplicable. There is no good reason for this. Everybody knows after your first year in law school about how badly you do. For purposes of diversity of citizenship, you must allege residence, pardon me, citizenship and not residency. But this one is even worse because in the very pleading that they filed with the court, somebody obviously knew how to do it because they alleged domicile status for Philpott and for Weinberg. This is, like I said, as it was in pin K, simply an inexplicable act. There is no good reason for it unless the court agrees with me that what should be occurring here is the district court attempts to conduct some analysis and find out what occurred here. And I believe and would submit to this court that what occurred here is that the neglect is so inextricably linked to what occurred at the exact same time, which was the filing of this abusive second amended complaint under a manifestly erroneous standard. If I'm understanding you, are you saying that on the, I guess that's the third factor, which you're interpreting as the reason for the neglect is that they were inappropriately putting all of their associates and partners in preparing the second amended complaint and didn't spend enough time searching through the complaint in order to fix it? Is that what you're saying? I'm saying under factor number three, is there a reason for the delay? In this case, there is no rational reason for the delay that anybody, I believe, can pick up from this record, particularly since they knew how to do it correctly. I'm saying those factors go to factor number four, good faith. That is that the district court could make a determination that there was a preoccupation and deed of session with attempting to resurrect a case that was already functionally dead as a result of this fool's testimony by spending enormous amounts of time drafting a second amended complaint, not only in bad faith, but citing an erroneous rule as to why the court should grant leave to a man. That is the type of context that I think the court in Pinquet was suggesting district courts are in the best position to take a look at. And again, I would simply say that I think there are a number of the factors here that militate toward the district court doing it. One last thing, please let's not forget. Under the Lomage opinion, what the court found was almost an additional factor, if you will, which was in that case there was going to be prejudice to the plaintiff. But remember what happened here. After this case was dismissed, Ms. Wolfe went into Los Angeles Superior Court and filed the complaint again. There was no time bar on that claim, none at all. As a matter of fact, one of the big questions everybody has asked here is when Judge Gutierrez dismissed this complaint, why didn't she just refile it in the district court? She could have done it that way with proper allegations of jurisdiction. Instead, she went to state court. It got removed back up to federal court, transferred to Judge Gutierrez, and what did she do? Dismissed. No motion. She just dismissed on her own. Now, that is the type of context and acts that I think the district court should be imbued with the power to take a look at and try to figure out why that occurred. There is really no explanation for that. And my point is, unlike Lomage, there was no prejudice to Ms. Wolfe at all by this particular dismissal because she could have just refiled, which she did. You're running over time now. Could you please wrap up? I will. I wanted to speak briefly to the issue of collateral. You're a minute over time. I'm sorry. I had nothing to say on the issue of collateral estoppel beyond what is in the briefs, and I hope that the courts would consider that issue. Thank you. Your Honors, let me address this bad faith point, first of all. Number one, as counsel admits, the inquiry is whether the mistake was made in good faith. Ms. Lewis's declaration, which is at pages 186 through 188 of the excerpt's record, demonstrates it was a mistake. There was a mistake. That's what happened. It wasn't a second amended complaint that was being filed. This was a motion to file a second amended complaint. It had to do with claims. You heard Mr. Kinsella, a very passionate advocate, making all kinds of accusations, and they made a claim that there were two or three allegations in the complaint about whether negotiations had been underway. And in Ms. Wolf's deposition, she said she didn't know if there was. So in response to that, before the OSC, Ms. Lewis told counsel that those allegations would be amended and that they would be filing a motion to amend the complaint. There was no connection between that and the mistake in response to the OSC. Why in the world would the allegation of jurisdiction not have been fixed? It makes no sense, and there's no evidence in the record whatsoever that this mistake was anything but a good faith error. And under Section 1653 and under Rule 60B, it's a classic case where this court should order that jurisdiction be returned. Mr. Kinsella can make all these arguments on the merits back in the district court. We're prepared to respond to them. This case was on the brink of trial. None of the other cases, this case had been pending for over three years. It was two months from trial, so it was extremely prejudicial to have the case bounce down on jurisdictional grounds at that point. It seems a little disingenuous to say it's on the brink of trial when we get to the collateral stopple agreement and you're arguing quite the opposite, that you should have some more time to do some discovery and things like that. How do I get there? On collateral stopple, Your Honor, I think that had been resolved. There was no summary judgment. That will be something. Fact discovery was closed, Your Honor, by the time this case was dismissed. Expert discovery was closed. So all that was left was for the district judge to rule on the 11 pending motions. So this case was ready to go to trial, and so it was extremely prejudicial, and I think it's a fair point that that distinguishes this case and shows a level of prejudice that wasn't present in the other cases. The other point I wanted to make, it goes to this point that the district judge didn't hear about Pioneer. The plaintiff in her brief in footnote 8 in the Rule 60b motion invoked Pioneer, and on that same page of the excerpt of the record, page 73, argued that the Pioneer standards did cover the stake, and then the defendants declared in their response to the Rule 60b motion, this is at the further excerpt of the record we filed, that the same legal standards apply to claims of excusable neglect and mistake, i.e., the Pioneer standards, and that's because Pioneer was interpreting the meaning of the word excusable. The question wasn't what does neglect mean, although the court said it means mistake and carelessness. So both parties fully briefed Pioneer. In the reply brief, plaintiffs included an entire section that was the Pioneer standards mandate relief. The district court did not even cite Pioneer, which was clearly error. So the waiver argument is clearly baseless. And then finally, on the question of, again, the question of going back to the district court, it is undisputed. Again, Mr. Kinsella did not suggest today there isn't diversity jurisdiction. There is. It's undisputed. This was a mistake. We respectfully ask Judge Goldberg. A narrow question. What, if anything, is the practical difference between giving relief under 1653, assuming we were going to do that and saying there's jurisdiction, or reversing on 60B and saying that the district court applying the Pioneer factors should have reopened? Your Honor, I think the practical effect is the same that the case would be reinstated. So I think the practical effect is exactly the same. This court could declare that it was wrong and abuse of discretion not to reinstate the case under either Section 1653 or Section 60B. I think probably the legal difference is Section 1653 gives this court independent plenary authority so it doesn't have to grapple with all the 60B questions where diversity jurisdiction clearly exists, which it does, and where this was put before the district court and it hasn't been raised for the first time on appeal. So that is just the clear, easy way. That's what Section 1653 is meant to do, and it's meant to allow this court not to have to deal with these issues when it's clear that diversity jurisdiction exists. Okay, thank you. Thank you, Your Honor. Yes, Your Honor. If I reverse under 60B and say you didn't consider all of the factors and therefore your decision is incorrect, it would go back to the district court. At that point, unless I guess the opposition would again move to have it put out, then I mean at that point all I've done is send it back for another decision on 60B, haven't I? That is a good point, Your Honor, that we may then be back up here, one side or the other, arguing about Rule 60B again, which would be inefficient, unnecessary, diversity jurisdiction exists. Yes, we may, but we don't know. We don't even know if they'd renew. That's true, Your Honor. That's why in Bateman the court said, let's just put this to rest now and move forward and go to the merits, and I think that makes the most sense here. Mr. Petrosi, isn't there a potential difference if you just looked at 60B between scenario on the one hand where the court vacates the decision and remands for the district court to reassess under Pioneer and Limoge and any other precedent on the one hand versus option two on the other hand where the court ruling on 60B reverses the district court? It doesn't just vacate and remand and says, you made a mistake. Relief should have been granted. I think that's what Limoge actually did. Yes, Your Honor. I think that if the court were to vacate and say it should have been granted, then the district court would, if I'm understanding your question right, Judge Gould, would then be required to reopen the case under Rule 60B as opposed to this court simply reversing and ordering that the case be reopened. Am I interpreting the two scenarios correctly, Your Honor? Right, except I would use the words reversing and vacating on the opposite options than you stated. But those are the options. That is, putting aside 1652, we could say you didn't apply the right standards, so your opinion's gone. We send it back, apply the right standards. Or we could say you didn't apply the right standards and we've looked at them and the answer is clear, so we send it back on the other issues. But 1653 is just a whole different vehicle, so I guess you've got to look at that too. And that's correct, Your Honor. And on option two that you laid out, that's what we respectfully request the court to do, is say one, 1653, the court should order the complaint amended. Alternatively, option two just laid out by Judge Gould, which is you didn't apply the standards, it's clear here, and for the same reasons. And again, I think the 1653 analysis infuses 60B. The underlying rule was meant to address attorney error of precisely this kind in order to avoid precisely this scenario. When you put that together with Rule 60B, this court has essentially two sources of authority. We request the court reverse and reinstate the case. Thank you very much. The case of Wolf v. Loring Ward International is submitted.
judges: Gould, Ikuta, Smith N. R.